UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Broussard                                                    Civil Action No. 10-122

versus                                                       Judge Tucker L. Melançon

Northwestern Mutual Investment                               Magistrate Judge Patrick J. Hanna
Services, LLC

**MEMORANDUM RULING**

Before the Court is a motion for summary judgment filed by defendant, Northwestern Mutual Investment Services, LLC ("Northwestern") [Rec. Doc. 30] and plaintiff, Jerome M. Broussard's opposition [Rec. Doc. 33; 36]. For the following reasons, the motion will be denied.

*Background*

This is an action filed by plaintiff Jerome M. Broussard for disability income insurance benefits against defendant Northwestern. Broussard was a physician specializing in obstetrics and gynecology who began his medical practice in Lafayette, Louisiana in 1982. In 1994, Broussard purchased a disability income policy with The Northwestern Mutual Life Insurance Company ("Policy"). *(R.30, Exh. C; R. 33, Exh. A).*

Broussard's deposition testimony establishes the following undisputed facts. *R. 30-2, Exh. A, 11/12/10 Depo. Of Broussard.* On or about the end of July 2008, an incident occurred which involved a patient of Broussard's who was about seven months pregnant. The patient made specific complaints to the Lafayette Police Department claiming that Broussard had kissed her belly, kissed her on the lips and pinched her breast. The patient also produced a recording in which Broussard indicated he wished she could accompany him to a seminar in Destin, Florida. About ten days later, the Police Department contacted Broussard. Following a criminal investigation, he was arrested for simple battery. Broussard denied any inappropriate conduct, and ultimately, the simple battery charge against him was

dismissed and expunged. Broussard returned to his practice and continued seeing patients for about four and a half months.

Toward the end of 2008, Broussard applied to renew his medical license. In connection with the renewal application, he informed the Louisiana State Board of Medical Examiners about the patient's allegations. In mid December 2008, the Board required him to go into inpatient treatment or it would take administrative action against him. Broussard chose to attend Pine Grove Behavioral Health & Addiction Services in Hattiesburg, Mississippi where he received two and a half days of outpatient interviews. Approximately ten days later, Pine Grove advised the Board that Broussard needed intensive therapy.

On or about January 17, 2009, Broussard was admitted as an inpatient to River Oaks Psychiatric Hospital in Harahan, Louisiana, where he was treated for one month. While at River Oaks, Broussard was diagnosed by Dr. Thomas Hauth with "Sexual Disorder Not Otherwise Specified." *R. 33, Exh. D.* Dr. Hauth told Broussard he was not fit to see patients and that he should resign his medical license. Thereafter, Broussard was referred by the Board's Physician Referral Program to David Alan Legendre, PhD, LPC, LMFT, LAC, a licensed professional and addictions counselor in Lafayette, Louisiana. Legendre diagnosed Broussard with Adjustment Disorder with disturbance of conduct, (Diagnostic Statistical Manual IV-R, 309.30) and Sexual Disorder (Diagnostic Statistical Manual IV-R, 302.9) which he stated had existed for years and predated the alleged 2008 incident. *R. 36, Exh. B, C, 01/18/11 Affidavit of Legendre.* Legendre further opined that Broussard's sexual disorder precludes him from performing the principal duties of an obstetrician/gynecologist and he should not work in such an occupation. *Id.* Based on his diagnosis, Broussard voluntarily resigned his medical license.

2.

Broussard submitted a Request for Disability Benefits to Northwestern claiming that he became totally disabled as of January 17, 2009 due to his sexual disorder, noting that the symptoms first appeared as of August 1995.[1] Northwestern denied Broussard's Request for Disability Benefits on October 22, 2009, stating that in its judgment Broussard's claim did not result from a sickness, but rather as a result of professional boundary violations with respect to his patients. *R. 30-2, Exh. D.* Broussard filed a state court petition against Northwestern in the Fifteenth Judicial District, Lafayette, Louisiana on December 14, 2009. *R. 1.* Northwestern removed the action to this Court on January 27, 2010. *Id.*

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however,

---

[1] Broussard stated that from 1995 until he terminated his practice in 2009 he had sexual relationships with between five and eight of his patients. *Id. at pp. 81-83.*

the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(c). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

*Analysis*

The parties agree that the language in Section 2.1 of the Policy governs the determination of whether or not plaintiff is entitled to disability benefits. Section 2.1 of the Policy, "Disabilities Covered By The Policy," provides in pertinent part:

> 2.1 DISABILITIES COVERED BY THE POLICY
>
> Benefits are provided for the Insured's total or partial disability only if:
>
> > the Insured becomes disabled while this policy is in force;
> >
> > the Insured is under the Regular Care of a licensed Physician during disability;
> >
> > the disability results from an accident that occurs or a sickness that first appears while this policy is in force.

*R.30, Exh. C; R. 33, Exh. A.*

The parties further agree that the issue before the Court in this case concerns whether or not Broussard's alleged disability "results from an accident or sickness" as required by the Policy.

Northwestern contends that Broussard's inability to practice resulted solely from his arrest, his cessation of practice, and his subsequent voluntary resignation of his medical license, all of which are considered "legal disabilities." Because Broussard had sexual relationships with patients and continued to practice medicine during that time he has no "factual disabilities" due to sickness or injury, and therefore, the Northwestern does not owe Broussard benefits under the Policy. *Id.* Citing the opinions of Dr. Hauth and Dr. Legendre, Broussard argues that he does not claim a physical impairment, rather his impairment is a diagnosed psychological impairment which renders him unfit to practice medicine.

It is a general rule that disability insurance policies, such as those at issue in this case, provide coverage for factual disabilities (i.e., disabilities due to sickness or injury) and not

5.

for legal disabilities. 10 Couch on Insurance § 146:9 (3d ed.1998). Northwestern cites a number of cases, though none from this jurisdiction, denying the insured disability payments where it is clear that the insured was unable to work because of a license suspension or other legal consequence of the insured's unlawful behavior. *Solomon v. Royal Maccabees Life Ins. Co.,* 622 N.W.2d 101, 102 (Mich.App.,2000)*; Massachusetts Mut. Life Ins. Co. v. Ouellette*, 617 A.2d 132, 133-134 (Vt. 1992) (Defendant's inability to practice optometry was caused not by his illness but rather by his conviction for pedophilia); *Massachusetts Mut. Life Ins. Co. v. Millstein*, 129 F.3d 688, 691-692 (2nd Cir.,1997) (Attorney's incapacity was caused by his criminal conduct and the resulting revocation of his license due to his prior felony conviction, and not by a physical inability to perform his occupational duties).[3]

Northwestern contends that *Solomon* has a "nearly identical factual scenario" to this case. In *Soloman*, a medical doctor claimed he was disabled because he suffered from bipolar disorder which caused him to have improper sexual relationships with his female patients. *Id.* The defense argued that plaintiff was able to practice medicine successfully for thirty years until 1993 when he became legally unable to do so because a number of his former patients commenced legal proceedings against him, the medical board brought charges against him and he voluntarily surrendered his medical license. The court agreed with the defense, specifically noting that: (1) had the plaintiff not surrendered his license he would have been able to treat a significant portion of the population without risk; (2) the plaintiff continued to treat patients after he claimed total disability; and, (3) in the letter voluntarily surrendering his medical license plaintiff made no mention of his bipolar disorder, but "in fact," admitted that he chose to do so in order to quell any media exposure. *Id.*

---

[3] Both the *Ouellette* and *Millstein* courts held that any recovery of benefits under a disability income policy was precluded by public policy against allowing the insured to benefit from his intentionally injurious conduct. *Ouellette* at 135; *Millstein* at 692.

6.

Other cases, however, have found summary judgment to be inappropriate, despite a criminal conviction or license suspension, where a genuine dispute existed on whether the insured's factual disability preceded the legal disability. *See Paul Revere Life Ins. Co. v. Bavaro*, 957 F.Supp. 444, 449 (S.D.N.Y.1997) ( "If [Bavaro] demonstrates to the trier of fact that he is unable to work because of his mental and emotional problems then he is entitled to disability payments, despite the existence of his subsequent legal disability. If, however, the trier of fact believes that but for his legal disability he would be able to perform his occupation, then he is not entitled to disability payments."); *see also Damascus v. Provident Life & Accident Ins. Co.*, 168 F.3d 498 (9th Cir. Jan.27, 1999) (unpublished table decision) (district court erred in granting summary judgment on dentist's claim that he was "totally disabled" where an issue of material fact remained as to whether his mental illness ultimately led to the revocation of his license).

Both parties cite *Berry v. The Paul Revere Life Ins. Co.*, 21 So.3d 385 (La. App. 1 Cir. 07/08/09), in which an anesthesiologist claimed that his addiction to prescription medications made him disabled from the practice of anesthesiology because resuming his practice would require him to handle a variety of narcotic and other controlled substances, increasing his risk of relapse.[4] Claimant's insurer denied coverage asserting that his risk of relapse into addition was insufficient to render him permanently disabled when, in a sober and rehabilitated condition, he could practice his profession. The trial court granted summary judgment for the insurer and the appeals court reversed stating, "[w]e find that triable issues of material fact remain based on the affidavits submitted by [the parties' medical experts], as to whether

---

[4] Northwestern contends that *Berry* is distinguishable from this case because the anesthesiologist sought and obtained treatment for his addiction several years before his license was suspended. *Id*. at 386-387.

[the claimant] is able to return to the important duties of his occupation without seriously risking his health and the health and well-being of the public he may serve." *Id.* at 395.

Here, it is undisputed, at least for purposes of this motion, that Broussard suffers from "a sickness" under the terms of the Policy. The issue is whether this sickness has caused him to be disabled. The record indicates that Broussard now suffers from a legal disability in that he can no longer practice medicine because he surrendered his license. Broussard, however, has submitted the affidavit of Dr. Legendre who states that Broussard's sexual disorder existed for years, predated the alleged 2008 incident and precludes him from performing the principal duties of an obstetrician/gynecologist. The Court concludes that a genuine dispute exists on the issue of whether Broussard's sexual disorder is a factual disability which prevents him from performing the principal duties of his occupation. The Northwestern Mutual Life Insurance Company's Motion for Summary Judgment will therefore be denied.